IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

WILLIE FRANKLIN JOWERS, and
LLOYD ERIC SYLVESTER TAYLOR,

       Plaintiffs,                                                     No: 1:09-cv-1131-JDB-egb

       v.

GARY DEAN BECK, individually,
GARY DEAN BECK (as trustee of
The Gary Dean Beck Declaration of Trust
dated June 12, 2003, restated May 14, 2004),
GARY DEAN BECK (as co-trustee of
The Susan Beck Declaration of Trust dated
May 14, 2004), and UNIVERSAL
MARKETING OF AMERICA, INC.,

       Defendants.

**ORDER GRANTING MOTION TO DISMISS**

       Plaintiffs, Willie Franklin Jowers and Lloyd Eric Sylvester Taylor, filed suit against all Defendants on May 29, 2009, alleging that Defendants deprived them of funds to which they were contractually entitled as a result of insurance sales.[1] (Docket Entry ("D.E") No. 1, Complaint.) Pending before the Court is Defendant, Gary Dean Beck's, Motion to Dismiss for Lack of Personal Jurisdiction, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. (D.E. No. 4.) Plaintiffs have responded to the motion, and it is appropriate for disposition. For the reasons set forth hereinafter, the Court **GRANTS** the motion.

---

[1]     In its December 10, 2009 Order, the Court dismissed PacifiCare Health Systems, LLC, UnitedHealth Group Incorporated, and American Medical Security Group, Inc. as Defendants. (D.E. No. 32.) That Order contained a thorough recitation of the factual background of this matter, which is incorporated by reference herein.

STANDARD OF REVIEW

Rule 12(b)(2) of the Federal Rules of Civil Procedure permits a court to dismiss an action for lack of personal jurisdiction. A federal court may exercise jurisdiction over a person in a diversity case "if such jurisdiction is (1) authorized by the law of the state in which the court sits; and (2) is otherwise consistent with the Due Process Clause of the Fourteenth Amendment." Youn v. Track, Inc., 324 F.3d 409, 417 (6th Cir. 2003). The Tennessee long-arm statute confers "jurisdiction of the courts of this state as to any action or claim for relief arising from ... [t]he transaction of any business within the state ... [or] [e]ntering into a contract for services to be rendered ... in this state." Tenn. Code Ann. § 20-2-214(a). The long-arm statute is "construe[d] to extend to the limits of due process." Neal v. Janssen, 270 F.3d 328, 331 (6th Cir. 2001).

The Youn court instructed that,

> [t]he bedrock principle of personal jurisdiction due process analysis is that when the Defendant is not physically present in the forum, [he or she] must have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. "Minimum contacts" exist when the Defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there. It is necessary that the Defendant purposefully avail [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person. Random, fortuitous, or attenuated activity is not a constitutionally adequate basis for jurisdiction.

324 F.3d at 417 (internal citations and quotation marks omitted). Both "general" and "specific" jurisdiction may be adequate bases for personal jurisdiction. Conti v. Pneumatic Prods. Corp., 977 F.2d 978, 981 (6th Cir. 1992). General jurisdiction exists "when the defendant's contacts with the forum state are 'substantial' and 'continuous and systematic,' so that the state may

exercise personal jurisdiction over the defendant even if the action does not relate to the defendant's contacts with the state." Youn, 324 F.3d at 417-18. A federal court has specific jurisdiction "when 'a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.' " Id. at 418 (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)).

The burden of establishing the existence of personal jurisdiction lies with the party asserting such jurisdiction. Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 887 (6th Cir. 2002). In the absence of an evidentiary hearing on the jurisdiction question,

> the court must consider the pleadings and affidavits in a light most favorable to the plaintiff. To defeat such a motion, the plaintiff need only make a prima facie showing of jurisdiction. Furthermore, a court does not weigh the controverting assertions of the party seeking dismissal.

Dean v. Motel 6 Operating L.P., 134 F.3d 1269, 1272 (6th Cir. 1998) (citations omitted). In his response to such a motion, a "plaintiff may not rely on his pleadings; he must, by affidavit or otherwise, set forth specific facts establishing that the court has jurisdiction." Williams v. FirstPlus Home Loan Trust 1996-2, 209 F.R.D. 404, 409 (W.D. Tenn. 2002). "Once the defense has been raised, then the plaintiff must sustain [his] burden of proof in establishing jurisdictional facts through sworn affidavits and competent evidence. At no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. Once the motion is made, plaintiff must respond with actual proofs, not mere allegations." Machulsky v. Hall, 210 F. Supp. 2d 531, 537 (D. N.J. 2002) (quoting Patterson v. Federal Bureau of Investigation, 893 F.2d 595, 603-04 (3d Cir. 1990)); *see also*

Mende v. Milestone Tech., Inc., 269 F. Supp. 2d. 246, 251 (S.D.N.Y. 2003) (stating that conclusory allegations are insufficient to establish personal jurisdiction).

ANALYSIS

Beck—a Florida[2] resident—contends that Tennessee has neither general nor specific jurisdiction over him in this case. (D.E. No. 4, Motion to Dismiss, pp. 4, 6.) Conversely, the Plaintiffs assert that Beck is subject to jurisdiction in Tennessee under either theory. (D.E. No. 31, Response to Motion to Dismiss, p. 8.) The Court will analyze each potential basis for jurisdiction in turn.

    A.    <u>General Personal Jurisdiction</u>

To support his contention that he is not subject to general jurisdiction in the State of Tennessee, Defendant avers:

> Beck does not own or lease any real or personal property located in the State of Tennessee. Beck does not regularly travel to or through Tennessee for personal purposes. Beck does not maintain an office, mailing address, bank account or telephone listing in Tennessee, and Beck does not have any other temporary or permanent contacts, associations, ties or relationships with Tennessee residents, or with entities organized under the laws of the State of Tennessee. [. . .] Except in his capacity as President of Unimark, Beck does not correspond or communicate with individuals residing in Tennessee, or with entities organized under the laws of the State of Tennessee. [. . .] Beck's only involvement with the Plaintiffs and the Contracts was as a representative of Unimark.

(D.E. No. 4, Motion to Dismiss, p. 10) (internal citations omitted). Plaintiffs do not contradict any of Beck's assertions, but as proof that he is subject to general jurisdiction in Tennessee, they proffer Beck's maintenance of his personal Tennessee insurance producer's license for the past

---

[2] The complaint refers to Beck as a Missouri resident, but Beck himself says he resides in Florida. (D.E. No. 1, Complaint, p. 2; D.E. No. 4, Motion to Dismiss, p. 3.) For purposes of the instant motion, it is unimportant whether he is a Missouri or Florida resident—what matters is that all parties agree he does not live in Tennessee.

4

thirteen years: "[Beck's] personal licensure permitted him to operate as an insurance agent to maintain an agency, and [] he has been so licensed from 1996 to the present." [3] (D.E. No. 31, Response to Motion to Dismiss, p. 12.) Thus, the existence of general jurisdiction turns upon whether Defendant's licensure as a Tennessee insurance producer is sufficient to subject him to such jurisdiction in Tennessee.[4]

Plaintiffs go to great lengths to demonstrate that Beck maintains his Tennessee license in his personal capacity, as opposed to merely causing Universal Marketing of America, Inc. ("Unimark") to be licensed to do business in Tennessee. (D.E. No. 31, Response to Motion to Dismiss, pp. 10-12.) In so doing, Plaintiffs proffer several pieces of evidence to illustrate the fact that Beck's licensure is separate from his employment with Unimark. (Id.) Therefore, Plaintiffs argue that because Beck is personally licensed to do business as an insurance producer in Tennessee, he has contacts with this State that are sufficiently systematic and continuous for purposes of general jurisdiction. (Id.) In particular, they aver that his personal license permits him to appear as an agent of record on Tennessee insurance policies and to move sub-agents among different agent hierarchies. (Id. at p. 10.)

Even accepting as true Plaintiffs' contentions with regard to Beck's licensure and the effects thereof, Plaintiffs do not allege that Defendant's possession of an individual license

---

[3]  Beck notes that he is similarly licensed in twenty-five other states. (D.E. No. 4, Motion to Dismiss, pp. 3-4.)

[4]  In his motion to dismiss, Beck also avers that there is nothing about the Gary Dean Beck or Susan Beck Declarations of Trust (collectively the "Trusts") that would create Tennessee personal jurisdiction over him. (D.E. No. 4, Motion to Dismiss, p. 4.) In their response, Plaintiffs do not attempt to demonstrate that the Trusts subject Beck to either general or specific Tennessee personal jurisdiction. Indeed, the only reference to the Trusts in their response is the following: "Monies properly due Plaintiffs but diverted by Beck, including the above diverted commissions paid by Tennessee residents, personally benefited Beck and devolved into an income stream that funded, in part, the personal trusts created by Beck and over which Beck named himself trustee and co-trustee in 2004." (D.E. No. 31, Response to Motion to Dismiss, p. 3.) However, the response contains no further reference to the Trusts and does not contest any of Beck's arguments as to why the Trusts fail to sustain a basis for Tennessee personal jurisdiction. Moreover, there is nothing in the complaint to indicate that the Trusts in any way create or bolster Tennessee personal jurisdiction over Beck. Because Plaintiffs appear to concede as much in their response, the Court will not consider the Trusts as a possible basis for Tennessee personal jurisdiction.

motivated his conduct that forms the basis of this lawsuit.[5] That is, notwithstanding Plaintiffs' claims about Beck's personal licensure, they offer nothing apart from conclusory allegations that would indicate Beck was acting as an individual—instead of as a fiduciary representative of Unimark—when he took these actions. *See* Mende, 269 F. Supp. 2d. at 251 (conclusory allegations are insufficient to establish personal jurisdiction). As a result, even if the Court accepts the proposition that Beck's personal license permitted him to engage in the acts that are the subject of this litigation, there is no indication that he was doing so other than at the behest of Unimark, of which he serves as President. Even if Beck derived some sort of personal benefit from his actions as Plaintiffs claim he did, they have not established that any such benefit was anything more than ancillary to his function as the President of Unimark. (D.E. No. 31, Response to Motion to Dismiss, p. 5.) Thus, it would appear that the actions of which Plaintiffs complain were those of Unimark itself, brought to fruition by Beck in his capacity as President and not in an individual capacity. As such, the effect of Beck's personal Tennessee licensure makes little difference in this case, given the fact that Beck's actions pursuant to that license were in his fiduciary capacity for Unimark. To be sure, Beck's personal license *allowed* him to act on behalf of Unimark in Tennessee, inasmuch as he would have been legally unable to do so without it. Nevertheless, the mere fact that he possessed a personal license at the time does not, without more, indicate that his actions are in any way severable from the actions of Unimark. *See, e.g.*, Fiber Network Solutions, Inc. v. Pacific Bell, 2002 WL 31556514, at *4 (S.D. Ohio 2002)

---

[5] Plaintiffs repeatedly refer to the different "hats" that Beck wears—"Beck the individual, Beck the President of Defendant Unimark, and Beck the employee of [former] Defendants AMS, PacifiCare [. . .], and UHG." (D.E. No. 31, Response to Motion to Dismiss, pp. 3-4.) Ostensibly, Plaintiffs are claiming that with respect to the acts that are the subject of this litigation, Beck committed some of them in his individual capacity and others in his fiduciary capacity. However, in their discussion of general personal jurisdiction, the Plaintiffs cite only his personal license as the basis for such jurisdiction, and do not claim that he ever used that license in his individual capacity, or that his actions pursuant to his personal license were severable from his actions in his fiduciary capacity with Unimark. (Id. at pp. 10-12.) Thus, it is unclear when, if at all, Beck is alleged to have worn the "hat" of Beck the individual, but in any event, his personal licensure does not seem to have been such an event.

("[T]he mere fact that a defendant is licensed to do business in a state does not establish the requisite minimum contacts with that state"); Freethy v. Maconi, 2000 WL 1050587 (Tenn. Ct. App. 2000) (finding that a personal stockbroker's license was not sufficient, by itself, to subject defendant to Tennessee jurisdiction).

The central inquiry, then, is whether Beck is subject to general jurisdiction in Tennessee based solely upon acts he committed in his fiduciary capacity for Unimark. Beck argues that he is not, citing Tennessee's "fiduciary shield" doctrine. (D.E. No. 4, Motion to Dismiss, p. 9.) "The fiduciary shield doctrine precludes jurisdiction over an individual acting exclusively as a corporate officer on behalf of a bona fide corporation." Boles v. National Development Co., 175 S.W.3d 226, 251 (Tenn. Ct. App. 2005) (citing Stuart v. Spademan, 772 F.2d 1185, 1197 (5th Cir. 1985)). If the corporation is not a viable one, or if an individual is using the corporate form as a shield from personal liability, the "fiduciary shield" doctrine will not protect the individual. Id.  Courts have found that the "fiduciary shield" doctrine does not protect a corporate officer when, in addition to acting in his fiduciary capacity, he also conspires to commit some tortious or criminal act in Tennessee.  *See, e.g.*, Manufacturers Consolidation Svc., Inc. v. Rodell, 42 S.W.3d 846, 858-59 (Tenn. Ct. App. 2000) (finding that a conspiracy to commit intentional torts in Tennessee defeated fiduciary shield). In the case at bar, there is no such allegation of conspiracy, or of any wrongdoing aside from breach of contract. Moreover, the Plaintiffs do not contend that Unimark is a sham corporation or that it serves as Beck's alter-ego.

Plaintiffs' response does not address the "fiduciary shield" argument, nor does it offer any support for the proposition that Beck acted other than in his fiduciary capacity for Unimark—aside from their contentions about his maintenance of his personal insurance producer's license. Thus, the facts indicate that notwithstanding Plaintiffs' claims of injury at the

7

hands of Beck in his individual capacity, any Tennessee acts of which Plaintiffs complain were ones he committed in his capacity as President of Unimark. Therefore, the Court finds that Beck is not subject to general personal jurisdiction in Tennessee.

      B.      <u>Specific Personal Jurisdiction</u>

"When a controversy is related to or 'arises out of' a defendant's contacts with the forum, the [United States Supreme] Court has said that a 'relationship among the defendant, the forum, and the litigation' is the essential foundation of in personam jurisdiction." <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 414, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984) (citing <u>Shaffer v. Heitner</u>, 433 U.S. 186, 204, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977)). The Sixth Circuit has articulated a three-part test for determining the appropriateness of a federal court's exercise of specific jurisdiction: (1) "the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state;" (2) "the cause of action must arise from the defendant's activities there;" and (3) "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."[6] <u>Southern Machine Co. v. Mohasco Indus., Inc.</u>, 401 F.2d 374, 381 (6th Cir. 1968).

Beck avers that he should not be subject to specific jurisdiction because he "has no contacts or connections with the State of Tennessee outside of his role as President of Unimark." (D.E. No. 4, Motion to Dismiss, p. 14.) Thus, he contends that he has not purposefully availed himself of the privileges and benefits of acting in Tennessee. (<u>Id</u>.) Moreover, Defendant claims

---

[6] The Plaintiffs assert, citing several Tennessee cases, that the tripartite test from <u>Mohasco</u> has been questioned by some Tennessee state courts. (D.E. No. 31, Response to Motion to Dismiss, p. 13.) However, the Sixth Circuit and the district courts therein—including this Court—have continued to apply the <u>Mohasco</u> test when analyzing the sufficiency of specific jurisdiction, pursuant to the personal jurisdiction jurisprudence of the United States Supreme Court. *See, e.g.*, <u>Air Prods. & Controls, Inc. v. Safetech Int'l Inc.</u>, 503 F.3d 544, 550-55 (6th Cir. 2007); <u>Youn v. Track, Inc.</u>, 324 F.3d 409, 418 (6th Cir. 2003); <u>Solid Gold Casino Hotel & Resort, Inc. v. Matrix Mgmt. Group</u>, 2007 WL 2220406, at *3 (W.D. Tenn. 2007).

that he has no "in-state activities from which the second prong of the *Mohasco* test could be satisfied. Indeed, the Complaint does not allege any specific *in-state* conduct, act[,] or communication by either Beck or Unimark that forms the basis of Plaintiff's [sic] breach of contract claim." (Id.) (emphasis in original). In other words, Beck maintains that his actions of which Plaintiffs complain did not occur in Tennessee.

Plaintiffs counter Defendant's arguments by claiming that "Beck has had contacts with at least seven Tennessee policy holder [sic] residents,"[7] and that these contacts "furthered Defendant Beck's scheme on which this suit is based: the gutting of Plaintiffs' agency and Plaintiffs' expected income stream from Plaintiffs' investment of Plaintiffs' time and money in building their agency." (D.E. No. 31, Response to Motion to Dismiss, pp. 15-16.) Although it is not entirely clear from Plaintiffs' memorandum, the Court believes that their claim in this regard is that as part of Beck's unjustified movement of sub-agents among different agent hierarchies, he directly contacted and/or solicited Tennessee policyholders, thus subjecting himself to specific jurisdiction in Tennessee.

This contention is flawed because, once again, Tennessee's "fiduciary shield" doctrine precludes Tennessee's exercise of personal jurisdiction over Beck if his only contacts with the state were in his capacity as the President of Unimark. *See supra* Section A. In their memorandum, Plaintiffs allege that Beck's contacts with Tennessee are "directly attributable to [Beck] in his personal capacity," but they offer no support whatsoever for this contention. (D.E. No. 31, Response to Motion to Dismiss, p. 16.) There is no indication that Beck's alleged

---

[7] The support Plaintiffs have proffered for their claim that Beck has contacted "at least seven" Tennessee residents is tenuous as well, as it appears to be based in large part upon conversations between the two Plaintiffs themselves. (D.E. No. 31, Exhibit C, Taylor Affidavit, ¶¶ 17-26.) Plaintiffs have submitted records that purport to establish that a few named individuals are Tennessee residents, but have offered no evidence that Beck actually contacted any Tennessee residents as part of his "scheme." Thus, the Plaintiffs' sole basis for specific jurisdiction appears to lack factual support and is composed primarily of conclusory allegations.

9

contacts with Tennessee—soliciting/communicating with Tennessee residents, moving sub-agents among agent hierarchies, and serving as an agent of record on insurance policies held by Tennessee residents—were the actions of Beck in his personal capacity, as opposed to his capacity as President of Unimark. Indeed, all of the aforementioned contacts with Tennessee are the natural incidents of Beck's fiduciary position with Unimark: communicating with Tennessee policyholders and making decisions about the management of the agents are tasks that appear to be squarely within the zone of responsibility for the president of a company in the insurance industry, and Plaintiffs have proffered nothing to suggest otherwise. Plaintiffs have offered no support for their position that Beck's contacts with Tennessee occurred while he was acting in his personal capacity, rather than his capacity as a fiduciary representative for Unimark. *See, e.g.*, Wilson v. Hofbauer, 113 F. App'x 651, 653 (6th Cir. 2004) ("wholly conclusory allegations are insufficient to state a cognizable claim for relief") (citing Chapman v. City of Detroit, 808 F.2d 459, 465 (6th Cir. 1986)); *see also* Mende, 269 F. Supp. 2d. at 251 (conclusory allegations are insufficient to establish personal jurisdiction).

It may well be the case, as Plaintiffs claim, that some of these actions and contacts with Tennessee inured to Beck's personal, financial benefit, but absent a showing that these were the actions of Beck in his personal capacity, the Court concludes from the facts submitted that all of Beck's contacts with Tennessee occurred while he was acting in his capacity as President of Unimark. Because Plaintiffs have not alleged that that Unimark is a sham corporation or an alter-ego for Beck himself, the "fiduciary shield" doctrine precludes specific jurisdiction for the same reasons that it precludes general jurisdiction, outlined *supra* Section A. *See* Boles v. National Development Co., 175 S.W.3d 226, 251 (Tenn. Ct. App. 2005) ("The fiduciary shield doctrine

10

precludes jurisdiction over an individual acting exclusively as a corporate officer on behalf of a bona fide corporation") (internal citation omitted).

As Plaintiffs have not established a prima facie case for Tennessee personal jurisdiction over Beck, they may not proceed against him in this forum.

CONCLUSION

For the reasons set forth herein, the Court **GRANTS** Defendant Gary Dean Beck's Motion to Dismiss for Lack of Personal Jurisdiction. (D.E. No. 4.)

**IT IS SO ORDERED** this, the 2nd day of February, 2010.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE